BAKER, Chief Judge,
in which RYAN, J., joins (dissenting):
This is a guilty plea case. The question presented is whether there is a substantial basis in law or fact to question the plea. Appellant admitted to possessing child pornography. He further admitted that at least one of these pictures depicted a “lascivious exhibition of the genitals or pubic area.” The military judge confirmed through his own review that at least one such picture did in fact constitute child pornography as defined in subsection 8(A). Nonetheless, the majority concludes that Appellant’s plea is improvident because the military judge, who had not seen all 173 images of “likely child pornography” found in Appellant’s possession, initially provided Appellant the definitions of child pornography corresponding to subsections 8(A) and 8(B) of the Child Pornography Prevention Act (CPPA). The military judge during sentencing subsequently concluded that some of the pictures in question did not meet the definition of child pornography, without clearly stating whether he was applying the definition applicable to subsection 8(A) or 8(B). Thus, the majority concludes, Appellant, who was trying to plead guilty to possessing child pornography, did not providently do so because he could not be certain which kind of child pornography he was guilty of possessing, subsection 8(A) child pornography or subsection 8(B) child pornography, and whether the pictures satisfied one or both definitions.
The majority opinion rests on incongruous positions. The majority concludes that Appellant’s plea was not provident because the military judge failed to clarify the subsection of the CPPA with which Appellant was being charged. At the same time, in declining to adopt United States v. Knox (Knox II), 32 F.3d 733 (3d Cir.1994), on the basis that it is inapplicable, the majority assumes that the military judge applied subsection 8(B) of the CPPA. United States v. Blouin, 74 M.J. 247, 251-52 (C.A.A.F.2015). This must be the case, as the majority does not elaborate on why Knox II is inapplicable to subsection *253 8(A), which contains identical language to the pre-2003 version of the CPPA the Knox II court interpreted. I disagree with both the majority opinion’s initial premise, and the conclusions it reaches in reliance on this premise.
In the instant case, there is no “substantial basis in law or fact for questioning the plea.” United States v. Passut, 73 M.J. 27, 29 (C.A.A.F.2014) (citing United States v. Schell, 72 M.J. 339, 345 (C.A.A.F.2013)). First, it is clear considering the plea colloquy in its totality that the military judge was applying subsection 8(A) of the CPPA. Further, although the military judge may have caused nominal confusion by reopening the plea colloquy, any uncertainty is not a substantial basis to question the plea under the circumstances of this case. Finally, the military judge did not err in applying Knox II during the plea colloquy, as Knox II remains good law and instructive as to the application of subsection 8(A) of the CPPA.
For all these reasons, I respectfully dissent from this Court’s opinion.

DISCUSSION

I. Appellant’s Guilty Plea to Subsection 8(A)
The majority opinion argues that there is a substantial basis to question Appellant’s plea because the military judge did not specify whether Appellant was charged under subsection 8(A) or 8(B) of the CPPA. As the majority opinion notes, the military judge recited the definitions for two categories of child pornography proscribed under subsections 8(A) and (B) of the CPPA, without specifying which subsection was applicable. However, which subsection applied, if any, depended on Appellant’s knowledge of the pictures he possessed, and how he described them to the military judge as part of the plea colloquy. After Appellant described his conduct, it became apparent that the military judge intended to, and was accepting, a guilty plea to subsection 8(A), requiring Appellant to stipulate to possessing child pornography using actual minors, with no requirement that the images also be “graphic.”
During the plea colloquy, before the military judge reviewed the sample photographs in Prosecution Exhibit 4 (PE 4), the military judge provided the definition of child pornography corresponding with charges brought under subsection 8(A), which does not contain a “graphic” requirement:
MJ: Now, I gave you the definition of sexually explicit conduct. Do you recall that definition?
ACC: Yes....
MJ: Okay. Did any of the images involve children engaging in sexual intercourse ... either amongst themselves or with adults?
ACC: No, sir.
MJ: Did any of them involve bestiality?
ACC:. No, sir.
MJ: Did any of them involve masturbation?
ACC: No, sir.
MJ: Did any of them involve sadistic or masochistic abuse?
ACC: No, sir.
MJ: The last category of sexually explicit conduct is lascivious eschibition of the genitals or pubic area. Now, what I hear you telling me is that’s the kind of image that you downloaded either through Google or
P2P. Is that accurate?
ACC: Yes, sir.
The military judge’s description of “[t]he last category of sexually explicit conduct” was taken verbatim from the definition applicable to subsection 8(A). The military judge at no point indicated during the plea colloquy that he was instead applying the definition under subsection 8(B), which defines “sexually explicit conduct” as “graphic or simulated lascivious exhibition of the genitals or pubic area of any person.” 18 U.S.C. § 2256(2)(B)(iii) (emphasis added). Immediately after providing this definition, the military judge proceeded to discuss the two sample images described earlier. Even after reviewing the sample images, the military judge again recited the definition of child pornography applicable to subsection 8(A), asking Appellant: “Both these photographs that we’ve talked about, do you believe that they were a lascivious exhibition of the geni- *254 tais or pubic area of the subject of the photograph as I’ve described that term for you?” Yet again, the military judge did not mention a “graphic” requirement.
In my view, the military judge’s repeated recitation of the definition applicable to subsection 8(A), both before and after analyzing the sample images, makes plain that Appellant was pleading guilty to violating subsection 8(A), not subsection 8(B), of the CPPA. While the military judge could have expressly stated that he was applying subsection 8(A), the plea colloquy was not so ambiguous that it would cause confusion as to which subsection of the CPPA applied.[1]
Significantly, there is no indication in the record that Appellant or defense counsel was actually confused. Appellant was engaged in his plea colloquy, at one point asking the military judge to repeat the definition of “lascivious” that was previously provided, and at another point conferring with defense counsel before responding to the military judge’s questions..
II. Matters Inconsistent with the Plea
The majority opinion also contends that there is a substantial basis to question the plea because of the military judge’s “failure to make further inquiries once he ruled that nine of the images to which Blouin had already pleaded guilty did not constitute child pornography,” Blouin, 74 M.J. at 252. I disagree. Given the exacting detail with which the military judge reviewed the two sample images, the failure to articulate why the nine images from PE 4 were not child pornography is not a substantial basis to question Appellant’s plea.
In reaching this conclusion, I am mindful of several factors that, considered in context, ameliorate the concerns the majority opinion raises. First, the military judge took pains to. provide Appellant the relevant definition of child pornography, and to review the applicable Dost factors as applied to the two sample images taken from PE 4. The colloquy was detailed and consistent with the provisions of the CPPA Second, the charges against Appellant did not specify a fixed number of images of child pornography in Appellant’s possession that formed the basis of these charges. Appellant was simply charged with “knowingly possessing] child pornography.” Appellant’s plea would be provident, therefore, even if only one image met the definition of child pornography under the CPPA. In other words, had PE 4 consisted of the three images found to be child pornography by' the military judge, Appellant’s guilty plea would still be provident.
Third, PE 4 was a sampling of the 173 photographs found in Appellant’s possession which were deemed “likely child pornography” by the Government. The admission of the representative images in PE 4 was sur-plusage. The Government was not required to admit any exhibits or carry any burden of proof. Appellant’s factual stipulations were the focus of the plea colloquy. The representative images were intended to facilitate, not replace, Appellant’s factual stipulations.
“In determining on appeal whether there is a substantial inconsistency, this Court considers the ‘full context’ of the plea inquiry, including Appellant’s stipulation of fact.” *255 United States v. Goodman, 70 M.J. 396, 399 (C.A.A.F.2011). In light of these circumstances, in my view, the military judge did not abuse his discretion in failing to make further inquiries after excluding nine photographs from PE 4. The military judge had already reviewed the relevant definitions and their application to two sample images, which are indisputably child pornography. See United States v. Blouin, 73 M.J. 694, 698 (A.Ct.Crim.App.2014). Appellant stipulated during the plea colloquy that he had possessed images of child pornography, the number of which was inconsequential in the instant case. As a factual matter, Appellant had possessed at least three images of child pornography, which sufficiently satisfied the charges. The military judge’s failure to explain his reasoning for excluding the nine images is troublesome, but not fatal to the providence of the plea.
As this Court stated in Roderick, courts determine “whether a particular photograph contains a ‘lascivious exhibition’ by combining a review of the Dost factors with an overall consideration of the totality of the circumstances,” which is, necessarily, a highly contextual and fact>specific inquiry. Roderick, 62 M.J. at 430. It would have been preferable for the military judge to review each of the nine images in detail and explain why, in his determination, they were not child pornography under the CPPA. But in light of the otherwise thorough plea colloquy, Appellant’s factual stipulations, the three images of child pornography, and the lack of itemization in the charges against Appellant, I conclude that the accused understood “the factual history of the crime, [and also] how the law relates to those facts.” United States v. Medina, 66 M.J. 21, 26 (C.A.A.F.2008). Goodman, 70 M.J. at 399, while distinguishable, is nevertheless instructive on this point.[2] Here, even if the military judge had further explicated why' the nine images did not satisfy the requirements of the CPPA and the Dost factors, and the totality of-the circumstances, such clarification would not have “raise[d] ... an inconsistency with regard to his guilty plea.” Id. at 400. It would not have had an impact on Appellant’s stipulations of fact, the military judge’s recitation of the definitions from the CPPA, or the analysis of the two sample images during the plea colloquy. The military judge’s clarification, while beneficial, did not cause a misunderstanding as to how the law applied to the facts.
Consequently, I would conclude that Appellant’s plea was provident.
III. Application of Knox II
The military judge’s reliance on Knox II, 32 F.3d at 736, during the plea colloquy did not set forth “an erroneous view of the law,” and is therefore not a substantial basis to question Appellant’s plea. See United States v. Inabinette, 66 M.J. 320, 322 (C.A.A.F.2008). The majority “decline[s] to accept the CCA’s invitation to adopt the Knox II standard as controlling precedent in this jurisdiction,” primarily on the basis that Knox II has been superseded by the 2003 amendments to the CPPA. Blouin, 74 M.J. at 260-51. Yet the majority’s reasoning for not adopting Knox II applies only with respect to subsection 8(B) of the CPPA, which was added as a result of the 2003 amendments, and introduced the “graphic” requirement. The majority fails to indicate why Knox II is inapplicable to subsection 8(A), whose language predated the 2003 amendments, was not substantially altered by these amendments, only reorganized, and has never contained a “graphic” requirement. As the majority *256 opinion notes, two subsections of the CPPA are potentially applicable in the instant case: subsection 8(A), which proscribes any “visual depiction, including photograph, film, video, picture, or computer or computer-generated image or picture,” the production of which “involves the use of a minor engaging in sexually explicit conduct,” defined as a “lascivious exhibition of the genitals or pubic area”; and subsection 8(B), which proscribes “any visual depiction” which “is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaging in sexually explicit conduct,” defined as a “graphic or simulated lascivious exhibition of the genitals or pubic area.” 18 U.S.C. § 2266(2)(A), (B); 18 U.S.C. § 2256(8)(A), (B) (emphasis added).
The majority opinion suggests that the 2003 amendments to the CPPA nullify Knox II. Yet by the majority’s own analysis, the 2003 amendments did not alter the portions of the CPPA that Knox II interpreted. Indeed, the majority opinion acknowledges that “[sjubseetion 8(A) contains the original language of the statute,” and subsections (B) and (C) were added “as the result of the 2003 amendments.” Blouin, 74 M.J. at 250.
The definition in the pre-2003 version of the CPPA that was at issue in Knox II defined “sexually explicit conduct,” in the context of child pornography, as “actual or simulated ... lascivious exhibition of the genitals or pubic area of any person.” 18 U.S.C. § 2256(2)(E) (1988 & Supp.- IV 1992); Knox II, 32 F.3d at 736 (“The principal question presented by this appeal is whether videotapes that focus on the genitalia and pubic area of minor females constitute a ‘lascivious exhibition of the genitals or pubic area’ under the federal child pornography laws.”). This language is retained in subsection (2) (A) of the CPPA even after the 2003 amendments. 18 U.S.C. § 2256(2)(A)(v) (2012) (defining “sexually explicit conduct” as “actual or simulated lascivious exhibition of the genitals or pubic area of any person”).[3] There is no graphic requirement under this subsection.
Given that the 2003 amendments did not repeal or substantially alter the language in the CPPA that Knox II interpreted, it is not clear to me why Knox II is no longer good law in light of these amendments.[4]
Moreover, contrary to the lead opinion’s assertion, several federal circuits have cited Knox II favorably since the 2003 amendments, some for the proposition that child pornography includes “lascivious” images of minors with clothed genitals or pubic area. *257 See United States v. Franz, 772 F.3d 134, 157 (3d Cir.2014) (citing Knox II favorably); United States v. Wallenfang, 568 F.3d 649, 659 (8th Cir.2009) (citing Knox II to support its holding that images of children whose genitals were covered by pantyhose still constituted child pornography under the CPPA even though the genitals were technically clothed); United States v. Helton, 302 Fed.Appx. 842, 846-47 (10th Cir.2008) (unpublished) (stating that the CPPA “does not specify the genitals or pubic area must be fully or partially uncovered in order to constitute an exhibition and, like our sister circuits, we decline 'to read such a requirement into the statute,” in finding that a video of a minor wearing underpants was child pornography (citation omitted)).[5]
In my view, under a plain reading of the CPPA, there is no threshold requirement that a visual depiction portray a minor’s nude genitals or pubic area before courts may apply the Dost factors. Knox II confirms this view, in finding that an image may constitute a “lascivious exhibition of the genitals or pubic area” based on an application of the six Dost factors and a totality of the circumstances test.[6] Knox II, 32 F.3d at 745-46, merely recognizes that, as in Dost, nudity of a minor’s figure is but one of six nonexhaustive factors that courts may consider when concluding that an image is child pornography. There is no requirement that visual depictions of minors display a child’s nude genitals or pubic area before courts may apply the Dost factors. I believe the inquiry into whether an image is child pornography begins and ends with the application of the Dost factors and the totality of the circumstances, as this Court stated in Roderick, 62 M.J. at 430, and as I stated in my dissent in Barberi. See United States v. Barberi, 71 M.J. 127, 135 (C.A.A.F.2012) (Baker, C.J., dissenting) (“My approach would take into consideration all of the Dost factors along with the totality of the circumstances with no particular factor being determinative.”). Given this understanding, the military judge did not err in relying on Knox II in the plea colloquy for the proposition that images of minors with clothed genitals and pubic area may still constitute child- pornography under the CPPA
Accordingly, I would hold that the military judge made no mistake in law by relying on Knox II.

CONCLUSION

It should not be this hard to plead guilty to possessing child pornography. The problem is found in convoluted statutes and even more convoluted case law, which is missing the forest for the trees. I would hold that there was no mistake of law and no substan *258 tial basis in fact for questioning Appellant’s guilty plea, I would further hold that Appellant did not misunderstand the facts as applied to his case. As a result, I would find Appellant’s guilty plea provident and affirm the CCA.
Part of the issue is unclear case law. Courts, including ours, have struggled to define and distinguish among pictures of children that are criminal and constitute child pornography, pictures that are constitutionally protected under the First Amendment, and pictures that are distasteful, but neither criminal nor protected. See, e.g., Barberi, 71 M.J. 127, overruled by United States v. Piolunek, 74 M.J. 107 (C.A.A.F.2015).
The problem largely originated with the Supreme Court’s invalidation of parts of the Child Pornography Prevention Act of 1996 in Ashcroft v. Free Speech Coal., 636 U.S. 234, 256, 122 S.Ct. 1389, 162 L.Ed.2d 403 (2002). The statute, the Court concluded, could reach too far and encompass constitutionally protected artistic expression as well as virtual images of children that might fall outside the criminal law. Id. However, the Court drew an opaque line. And, while the Supreme Court was worried about works of art and Romeo and Juliet, id. at 246-48, 122 S.Ct. 1389, lower appellate courts have been grappling with cases seeking to distinguish between what some judges view as supposedly lawful child erotica — photographs depicting young children dressed as prostitutes in G-strings in coy and provocative positions — and criminal child pornography — photographs depicting young children dressed as prostitutes in G-strings in coy and provocative positions that also show some sliver of the pubic area. See Barberi, 71 M.J. at 127. I am skeptical, if a majority of my colleagues are not, that ■the Congress, the Supreme Court, or, most importantly, the Constitution, intended such a nuanced result when it comes to the difference between criminal and constitutionally protected images of real children depicted in a pornographic manner,for the purpose of sexual gratification.
The legal complexity has a further dimension in the military because under Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934, conduct in the military that is service discrediting or that undermines good order and discipline might still be criminal even if the same conduct, in the civilian context, is not criminal, and may be protected, such as public criticism of the President while in uniform, adultery, or verbal sexual harassment. See Parker v. Levy, 417 U.S. 733, 744-50, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974); United States v. Forney, 67 M.J. 271, 275 (C.A.A.F.2009); United States v. Marcum, 60 M.J. 198, 206 (C.A.A.F.2004).
This case does not present these matters. Appellant possessed at least one picture of child pornography that met the definition of child pornography under subsection 8(A). He admitted to doing so. The military judge found he did so. And the CCA affirmed that he did so, as well. Therefore, I would hold, consistent with Appellant’s factual stipulations and the military judge’s and the CCA’s findings, that Appellant possessed child pornography, and uphold his conviction.

. The military judge's review of the sample images during the plea colloquy was thorough, to ensure that the images were, indeed, "lascivious,” as required under subsection 8(A) of the CPPA. Therefore, the fact that the military judge did not discuss the "graphic” requirement under subsection 8(B) with Appellant does not suggest that the military judge was careless or inattentive. Rather, this omission tends to support the conclusion that the military judge was applying subsection 8(A), not subsection 8(B). Indeed, when reviewing the sample images, the military judge stringently applied the relevant United States v. Dost, 636 F.Supp. 828, 832 (S.D.Cal.1986), aff'd sub nom. United States v. Wiegand, 812 F.2d 1239 (9th Cir.1987), factors, which this Court has recognized as the appropriate test for determining whether child pornography is "lascivious.” See United States v. Roderick, 62 M.J. 425, 430 (C.A.A.F.2006). For example, when analyzing the second sample image, the military judge asked, consistent with the Dost factors: (1) "[i]s her genital area and pubic area in the center of the photograph?”; (2) "Was that kind of a pose appropriate for somebody of that age?”; (3) "Did that pose appear to you to be sexually suggestive?”; and (4) "Do you believe that’s what the photographer intended?" As noted, there was no line of questioning to elicit a factual stipulation that the images Appellant possessed were also "graphic,”

. In Goodman, this Court evaluated whether a guilty plea was provident when the accused made statements during the plea inquiry that "raised the issue of mistake of fact," which would have been an affirmative defense to the charges. 70 M.J. at 399. Specifically, the accused was charged with sexual harassment, and made comments during the plea inquity suggesting that he believed his advances were welcome, which would have supported an affirmative "state of mind" defense. Id. This Court reviewed "whether the failure of the military judge to advise Appellant of the mistake of fact defense and secure his disclaimer of the defense requires us to set aside his guilty plea.” Id. at 397. This Court concluded that the military judge was not required to further question the accused on this statement because the accused’s testimony, ultimately, "did not raise a mistake of fact defense or an inconsistency with regard to his guilty plea.” Id. at 400. Goodman is comparable to the case at hand.

. The 2003 amendments moved the phrase “lascivious exhibition of the genitals or pubic area” from subsection (2)(E) of 18 U.S.C. § 2256 to subsection 2(A)(v). Prosecutorial Remedies and Other Tools to End the Exploitation of Children Today Act of 2003 (PROTECT Act), Pub.L. No. 108-21, 117 Stat. 650 (2003). The term "lascivious exhibition of the genitals or pubic area” was first introduced in the Child Pornography Prevention Act in 1984 when the act was first amended, and the phrase "lewd” was replaced with "lascivious” throughout the act. Pub.L. No. 98-292, 98 Stat. 204 (1984). This amended the original phrase, “lewd exhibition of the genitals or pubic area" to "lascivious exhibition of the genitals or pubic area.” Compare Protection of Children Against Sexual Exploitation Act of 1977, Pub.L. No. 95-225, 92 Stat. 7 (1978), with Pub.L. No. 98-292, 98 Stat. 204. Subsequent amendments, even those made in 2003, did not alter or excise this phrase from the act altogether. See 18 U.S.C. § 2256(2)(A)(v).

. For this reason, the majority opinion’s reliance on a footnote in United States v. Williams, 444 F.3d 1286, 1299 n. 63 (11th Cir.2006), rev’d. United States v. Williams, 553 U.S. 285, 128 S.Ct. 1830, 170 L.Ed.2d 650 (2008), to suggest that Knox II is no longer good law is, respectfully, too thin a reed on which to hang a rejection of the application of Knox II. Blouin, 74 M.J. at 251. In that footnote, the Williams court was commenting, in dicta, that Knox II was "likely" inapplicable where a statute contains "the requirement that lascivious exhibitions be ‘graphic’ under the PROTECT Act's amended obscenity definition.” 444 F.3d at 1299 n. 63. The Williams court did not suggest that Knox II was no longer good law for obscenity definitions that do not contain a "graphic” requirement, such as subsection 8(A). Indeed, in deciding “[w]hat exactly constitutes a forbidden ‘lascivious exhibition of the genitals or pubic area,’ ” the Williams court expressly stated that "the pictures needn’t always be ‘dirty’ or even nude depictions to qualify.” Id. at 1299. Arguably, then, the Williams court accepted Knox II's continuing application to the phrase “lascivious exhibition of the genitals or pubic area,” appearing in subsection 8(A), while still relating in a footnote that Knox II "likely” did not apply to subsection 8(B), which contains a "graphic” requirement.

. The majority opinion cites two federal courts of appeals cases that "have undermined Knox II": United States v. Vosburgh, 602 F.3d 512, 538 (3d Cir.2010), and United States v. Gourde, 440 F.3d 1065, 1070 (9th Cir.2006). In my reading, they do not do so. These cases merely state, with no elaboration or enumeration of factors, that child pornography is distinct from legal child erotica. The opinions do not define child pornography or child erotica, and are therefore of limited utility in the instant case, where these definitions are of central importance. Recognition that child erotica is legal does not confirm or disavow any supposed nudity requirement of the genital or pubic area in the CPPA. For example, in Vos-burgh, the court defines "child erotica” simply as photographs not lascivious enough to be child pornography. See 602 F.3d at 520 (describing the images of child erotica found with images of child pornography as "suggestive” without any further description of what these images contain). In Gourde, the United States Court of Appeals for the Ninth Circuit summarily states that "adult pornography and child erotica” are "legal content," without explaining what constitutes child erotica. Gourde, 440 F.3d at 1070. These opinions do not undermine Knox II’s applicability in determining whether visual depictions are child pornography.

. The six “Dost factors" are:
(1) whether the focal point of the visual depiction is on the child’s genitalia or pubic area; (2) whether the setting of the visual depiction is sexually suggestive, i.e. in a place or pose generally associated with sexual activity; (3) whether the child is depicted in an unnatural pose, or in inappropriate attire, considering the age of the child; (4) whether the child is fully or partially clothed, or nude; (5) whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity; (6) whether the visual depiction is intended or designed to elicit a sexual response in the viewer.
Roderick, 62 M.J. at 429.